**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| **DAVID FIELDS,** | ) | |
| | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | |
| | ) | **Case No. 25-cv-1805-DWD** |
| **ST. CLAIR COUNTY ILL.,** | ) | |
| **ST. CLAIR SHERIFF'S DEPT.,** | ) | |
| **POLICE DEPT. BELLEVILLE, ILL.,** | ) | |
| **W. KEYES,** | ) | |
| **GREG HOSP,** | ) | |
| **ETHAN HANRAHAN,** | ) | |
| **SEAN SCHMIDT,** | ) | |
| **DARREN RUCKER,** | ) | |
| **C. FRUEND,** | ) | |
| **UNKNOWN PARTY,** | ) | |
| **AARON HACKLEMAN,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM & ORDER

**DUGAN, District Judge:**

Plaintiff David Fields, a former inmate of the Federal Burean of Prisons[1] brings this civil rights action pursuant to 42 U.S.C. § 1983 for alleged deprivations of his constitutional rights concerning monitoring, a traffic stop, and an arrest in 2024. The Complaint is now before the Court for preliminary review pursuant to 28 U.S.C. § 1915A. Under Section 1915A, the Court is required to screen prisoner complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a)-(b). Any portion of a complaint that is

[1] At the time of filing the complaint, Plaintiff was incarcerated, so the Complaint is properly subject to review under 28 U.S.C. § 1915A.

legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief must be dismissed. 28 U.S.C. § 1915A(b). At this juncture, the factual allegations of the *pro se* complaint are to be liberally construed. Rodriguez v. Plymouth Ambulance Serv., 577 F.3d 816, 821 (7th Cir. 2009).

## THE COMPLAINT

Plaintiff asserts the following: Based on an anonymous tip regarding drug activity, the St. Clair County Sheriff's Department began monitoring the house of Plaintiff's girlfriend, Passion Greer, in December 2023. (Doc. 1, p. 3, 11-12). Surveillance of Greer's house was organized by Captain Greg Hosp and "signed off on" by Lieutenant Keyes. From December through January 2024, the house was repeatedly watched, primarily by Detective Aaron Hackleman. Because the law enforcement officers watching Greer's house did not witness any activity that would justify a search warrant, the officers decided to "manufacture a reason." (*Id.*).

On January 11, 2024, Plaintiff and Greer left Greer's house by car, and they were followed by Detective Hackleman, Officer Darren Rucker, and Captain Hosp. (Doc. 1, p. 3). The law enforcement officers then used a traffic infraction as a pretext to stop the car that Plaintiff was driving. Plaintiff alleges that he was not issued a citation during the stop, and he and Greer were detained in the car until a drug dog arrived to conduct a sniff search of the exterior of the car. After the drug dog alerted, Plaintiff and Greer were removed from the vehicle. Officers conducted a pat down of Plaintiff and Greer, and

nothing was found on their person. Detective Hackleman searched the car and found marijuana. Both Plaintiff and Greer were then arrested. (*Id.*).

Late that evening, Detective Hackleman and Investigator Schmidt interrogated Greer and pressured her into allowing them to search her home. (Doc. 1, p. 3). Greer, along with Captain Hosp, Investigator Schmidt, and Detective Hackleman returned to Greer's house. The law enforcement officers conducted a search of the house and found marijuana and a gun. (*Id.* at p. 4). Plaintiff was charged in Illinois state court with unlawful possession of a firearm by a felon and possession with intent to deliver cannabis. (*Id.* at p. 4, 16, 17).

Following his arrest, Plaintiff was denied bail and held in a county jail for 15 to 16 months. (Doc. 1, p. 5, 7). During this time, he lost his job, his truck was repossessed, and his federal supervised release was revoked. (*Id.* at p. 4, 7).

Over a year later, the state criminal charges against Plaintiff were dismissed after the evidence found during the search of the vehicle was suppressed as the product of an illegal search. (Doc. 1, p. 6, 18). The state court concluded that stopping Plaintiff for speeding and then detaining him for a drug search after the traffic stop itself had concluded was not reasonable under the Fourth Amendment. (*Id.*).

## PRELIMINARY DISMISSALS

Section 1983 imposes liability on "any person" who, under color of state law, deprives another of rights protected by the Constitution. In *Monell*, the Supreme Court held that Congress intended municipalities and other local government entities to be included among those persons to whom Section 1983 applies. *Monell v. Dept. of Soc. Servs.*,

436 U.S. 658, 690 (1978). In order to obtain relief against a municipality, a plaintiff must allege that the constitutional deprivations were the result of an official policy, custom, or practice of the municipality. *Monell*, 436 U.S. 658, 691 (1978); *see also Pourghoraishi v. Flying J, Inc.*, 449 F.3d 751, 765 (7th Cir. 2006).

Here, it appears that Plaintiff is attempting to hold Defendants St. Clair County, St. Clair County Sheriff's Department, and Belleville Police Department liable for the conduct of its employees, which he cannot do. Plaintiff does not allege that the constitutional violations were the result of a policy or custom instituted by any of these Defendants. And a "local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents." *Monell*, 436 U.S. at 694. Furthermore, the mere naming of St. Clair County, St. Clair County Sheriff's Department, and Belleville Police Department as defendants without further details is insufficient to state a claim. For these reasons, any intended claims against St. Clair County, St. Clair County Sheriff's Department, and Belleville Police Department are dismissed.

The Court also dismisses claims against Defendants Investigator Sean Schmidt and Officer C. Fruend. To successfully plead a claim under Section 1983, a plaintiff "must show that the defendants were personally responsible for the deprivation of their rights." *Wilson v. Warren Cnty., Ill.*, 830 F.3d 464, 469 (7th Cir. 2016). "A defendant is personally responsible 'if the conduct causing the constitutional deprivation occurs at his direction or with his knowledge and consent.'" *Id.* (quoting *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995)).

Plaintiff assertions against Officer Fruend and Investigator Schmidt pertain only to their interaction with Greer, not Plaintiff. Plaintiff claims that Officer Fruend "was called in to do a female pat down" of Greer, after they had been stopped for a traffic violation and a dog alerted to presence of drugs in the vehicle. (Doc. 1, p. 3). He asserts that Schmidt interrogated Greer late that evening and that Schmidt went with Greer, along with Hosp and Hackleman, to her house to conduct a search. (*Id.* at p. 3-4). These assertions are not enough for the Court to make the plausible inference that Fruend or Schmidt were involved in depriving Plaintiff of *his* constitutional rights. Accordingly, all claims against Fruend and Schmidt are dismissed.

Finally, the Court dismisses any intended claims against Unknown Party Officers. In the case caption, Plaintiff lists "all involved officers, known and unknown" as a defendant. (Doc. 1, p. 1). While Plaintiff may use the "John Doe" or "Unknown" designation to refer to specific individuals whose names are unknown, he must still follow Federal Rule of Civil Procedure 8 pleading standards and include a short, plain statement of the case against each individual. He does not describe the unknown defendants or identify particular acts or omissions by any specific unknown individuals who allegedly violated his constitutional rights in the Complaint. Thus, Unknown Party Officers are dismissed. *See Brooks v. Ross*, 578 F.3d 574, 580 (7th Cir. 2009) (finding the phrase "one or more of the Defendants" did not adequately connect specific defendants to illegal acts, and thus failed to adequately plead personal involvement); *Collins v. Kibort*, 143 F.3d 331, 334 (7th Cir. 1998) ("A plaintiff cannot state a claim against a defendant by including the defendant's name in the caption.").

## DISCUSSION

Based on the allegations in the Complaint, the Court designates the following counts in this pro se action:

**Count 1:** Fourth Amendment claim against Defendants Hosp, Keyes, Hackleman, and Hanrahan for observing Plaintiff leaving Greer's home on January 11, 2024, while conducting surveillance.

**Count 2:** Fourth Amendment claim against Defendants Hosp, Hackleman, Hanrahan, and Rucker for the unreasonable traffic stop on January 11, 2024, that resulted in a canine sniff and search of Plaintiff's car and search of his person.

**Count 3:** Fourth Amendment claim against Defendants Hosp, Hackleman, Hanrahan, and Rucker for false arrest and imprisonment.

**Count 4:** Fourth Amendment claim against Defendants Hosp, Hackleman, Hanrahan, and Rucker for malicious prosecution.

The parties and the Court will use these designations in all future pleadings and orders unless otherwise directed by a judicial officer of this Court**.** Any claim that is mentioned in the Complaint but not addressed in this Order is considered dismissed without prejudice as inadequately pled under *Twombly*. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim that is plausible on its face").

### Count 1

The Fourth Amendment provides, in part, for "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures."

U.S. Const. amend. IV. A "search occurs either when the government physically intrudes without consent upon a constitutionally protected area in order to obtain information, or when an expectation of privacy that society is prepared to consider reasonable is infringed." *United States v. Tuggle,* 4 F.4th 505, 512 (7th Cir. 2021) (internal quotations and citations omitted).

Based on the allegations as pled in the Complaint, a search for Fourth Amendment purposes did not occur when Defendants, who were conducting surveillance, observed Plaintiff leaving the house with a black backpack and driving away with Greer in a car on January 11, 2024. (*See* Doc. 1, p. 3, 12). First, there is no indication that Defendants physically intruded on Greer's property while conducting surveillance. Plaintiff states that in conducting surveillance Defendants "repeatedly watched" the residence. (Doc. 1, p. 3). Second, Plaintiff does not have an expectation of privacy when walking from the home to his vehicle, which was plainly visible to the public. *See Tuggle,* 4 F.4th at 513 (holding that the Fourth Amendment "did not require officers to 'shield their eyes' (or their cameras) when passing by [the defendant's] 'home on public thoroughfares.'" (quoting *California v. Ciraolo,* 476 U.S. 207, 213 1986)). Thus, Plaintiff has failed to state a claim against Defendants Hosp, Keyes, Hackleman, and Hanrahan for a Fourth Amendment violation when conducting surveillance. Count 1 is dismissed.

**Count 2**

Although Plaintiff argues that the traffic stop on January 11, 2024, was pretextual, he does not claim that he did not commit a traffic infraction; nor does he refute his attached exhibits which record that he was initially stopped for a speeding violation. (*See*

Doc. 1, p. 5, 12). "[T]he Fourth Amendment permits pretextual stops as long as they are based on an observed violation of a traffic law." *U.S. v. McPhaul,* 14-cr-00203-TWP-TAB, 2015 WL 4193056, at *3 (S.D. Ind. July 10, 2025) (citing *Whren v. U.S.*, 517 U.S. 806, 810 (1996)). Because Defendants had a lawful basis to initiate a traffic stop, they did not violate Plaintiff's Fourth Amendment rights solely by doing so.

However, "a seizure that is 'lawful at its inception' can nonetheless violate the Fourth Amendment if it is 'prolonged beyond the time reasonably required to complete' the initial mission of the stop." *United States v. Rodriguez-Escalera,* 884 F.3d 661, 668 (7th Cir. 2018) (quoting *Illinois v. Caballes,* 543 U.S. 405, 407 (2005)). "Absent reasonable suspicion…law enforcement may not extend a traffic stop with measures like a dog sniff unrelated to the mission of the stop." *Id. See also Rodriguez v. United States,* 575 U.S. 348 (2015); *United States v. Lewis,* 920 F.3d 483, 491 (7th Cir. 2019) (conducting a dog sniff simultaneously with the issuance of the traffic stop does not violate the Fourth Amendment, but prolonging a traffic stop to conduct a sniff without independent reasonable suspicion is not permissible).

Plaintiff alleges that Defendants, without independent reasonable suspicion, extended the traffic stop beyond the time necessary to issue a traffic citation, in order to request a canine unit and gather evidence of another crime. (Doc. 1, p. 3, 5). These allegations are sufficient for Plaintiff to proceed with Count 2 against Defendants Hackleman, Hanrahan, Rucker, and Hosp.

**Counts 3 and 4**

Plaintiff argues that because he was arrested, held in custody, and prosecuted based on evidence found during the unlawful search of his vehicle, his arrest, imprisonment, and prosecution were therefore in violation of the Fourth Amendment. The Court construes these assertions as asserting claims of false arrest and imprisonment and malicious prosecution under the Fourth Amendment.

The first issue is whether Plaintiff was initially wrongfully arrested and held in custody. Although the state court eventually suppressed the evidence "seized during the search of the vehicle," (Doc. 1, p. 18), that does not "vitiate the probable cause to arrest, because (among other reasons) the fruit of the poisonous tree doctrine is not available to assist a § 1983 claimant." *Martin v. City of Chi.*, No. 15-cv-04576, 2017 WL 56633, at *4 (N.D. Ill. 2017) (quoting *Townes v. City of New York*, 176 F.3d 138, 149 (2d Cir. 1999). As the Northern District Court has observed:

> The fact that the search might not have been supported by probable cause does not establish a claim for false arrest and malicious prosecution, however…The exclusionary rule is generally limited to criminal proceedings, and both the Supreme Court and Seventh Circuit have recognized a number of situations in which it cannot apply.

*Bradshaw v. Chi. Police Officer Mazurski*, No. 3 C 2074, 2004 WL 170337, at *6 (N.D. Ill. Jan. 15, 2004) (citations omitted). *See also Martin v. Marinez*, 934 F.3d 594, 599 (7th Cir. 2019). ("[T]he fact that the evidence was the fruit of an illegal detention does not make it any less relevant to establishing probable cause for the arrest because the exclusionary rule does not apply in a civil suit under § 1983 against police officers."). In other words, even though the state court held that the officers lacked reasonable suspicion or other cause to

continue to detain Plaintiff's vehicle once the mission of enforcing the traffic laws had concluded, after officers searched the car, as pled, "they obtained sufficient evidence to properly arrest the plaintiff[] with probable cause" – marijuana in the backpack Plaintiff was previously seen carrying from Greer's house. *Cannon v. Christopher,* No. 06-CV0267, 2007 WL 2609893, at *5 (N.D. Ind. Sept. 6, 2007). *See also* *Townes v. City of New York,* 176 F.3d 138, 149 (7th Cir. 1999) (finding that the defendants may not have had probable cause to search the plaintiff's car, but they "certainly had probable cause to arrest him upon discovery of the handguns"). And as "[p]robable cause to arrest is an absolute defense to any claim under Section 1983 against police officers for wrongful arrest, false imprisonment, or malicious prosecution," *Mustafa v. City of Chi.,* 442 F.3d 544, 547 (7th Cir. 2006), Count 3 is dismissed.

Plaintiff's claim for malicious prosecution also fails. "Before legal process is instituted, a pretrial seizure…constitutes a false arrest or false imprisonment—the institution of legal process thus transforms a Fourth Amendment challenge to pretrial detention without probable cause from a false-imprisonment claim to a malicious-prosecution claim." *Jackson v. City of Chi.,* No. 22 C 4337, 2024 WL 5264703, at *4 (N.D. Ill. Dec. 31, 2024) (citations omitted). In order to allege a malicious prosecution claim under Section 1983, Plaintiff must allege that the "criminal prosecution (1) was instituted without probable cause; (2) for a malicious motive—a purpose other than bringing the defendant to justice; and (3) ended without a conviction." *Evans v. Matson*, No. 23-2954, 2024 WL 2206638, at *2 (7th Cir. May 16, 2024) (quoting *Thompson v. Clark,* 596 U.S. 36, 44, 49 (2022)).

Plaintiff has failed to state a claim against Defendants Hosp, Hackleman, Hanrahan, and Rucker for malicious prosecution. Malicious prosecution is also "referred to as a claim for unreasonable seizure pursuant to legal process." *Thompson*, 596 U.S. at 42. Here, there is nothing in the Complaint to allow the plausible inference that the "legal process itself [went] wrong," *Manuel v. City of Joliet*, 5802 U.S. 357, 367 (20217), and that Defendants were involved in the legal process against Plaintiff following his arrest that resulted in his continued seizure. A "'pre-legal-process' arrest [cannot by itself] form the basis for a Fourth Amendment malicious prosecution claim." *Sam v. Frazier*, No. 25-cv-9752, 2026 WL 905206, at *3 (N.D. Ill. 2026) (citing *Neita v. City of Chi.*, 148 F.4th 916, 939 (7th Cir. 2025)). As the Seventh Circuit has observed, law enforcement officers' "influence generally ends where a prosecutor's begins." *Evans*, 2024 WL 2206638, at *3 (citing *Colbert v. City of Chi.*, 851 F.3d 649, 655 (7th Cir. 2017); *Reed v. City of Chi.*, 77 F.3d 1049, 1053 (7th Cir. 1996)). Because Plaintiff does not complain about his criminal proceedings or Defendants' influence or involvement in those proceedings, Count 4 is dismissed.

## Disposition

**IT IS HEREBY ORDERED THAT COUNTS 1, 3,** and **4** are **DISMISSED without prejudice**. **COUNT 2** will proceed against Defendants Hosp, Hanrahan, Hackleman, and Rucker. Because there are no surviving claims against Defendants St. Clair County Illinois, St. Clair Sheriff's Department, Police Department Belleville IL, Keyes, Schmidt, Fruend, and Unknown Party Officers, they are **DISMISSED without prejudice**. The Clerk of Court shall **TERMINATE** them as parties on the docket.

The Clerk of Court is **DIRECTED** to prepare for Defendants Hosp, Hanrahan, Hackleman, and Rucker: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint (Doc. 1), and this Memorandum and Order to Defendants' place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on Defendant, and the Court will require Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a Defendant cannot be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g). Pursuant to Local Rule 8.2, Defendant need only respond to the issues stated in this Merits Review Order.

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under Section 1915, Plaintiff will be required to pay the full amount of the costs,

regardless of whether his application to proceed in forma pauperis was granted. See 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that he is under a continuing obligation to inform the Clerk of Court and each opposing party of any address changes; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than 14 days after a transfer or other change of address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for failure to prosecute. FED. R. CIV. P. 41(b).

Plaintiff's Motion for Status (Doc. 18) is **GRANTED** by the issuance of this Order.

**IT IS SO ORDERED.**

**DATED:** August 31, 2026

DAVID W. DUGAN
United States District Judge

**NOTICE TO PLAINTIFF**

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to the complaint. It will likely take at least 60 days from the date of this Order to receive the defendants' Answers, but it is entirely possible that it will take 90 days or more. When all of the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at his time, unless otherwise directed by the Court.

The Court wishes to remind the Plaintiff that litigation is often viewed a series of hurdles that the Plaintiff must clear to get to another hurdle. Initial screening is such a hurdle, but it is a very low one for the Plaintiff to clear. As noted above, surviving initial screening only requires the bare statement of a claim that, if proven, could entitle Plaintiff to some relief. At trial, he will need to prove by a preponderance of evidence that the facts alleged actually occurred and that those facts satisfy the legal requirements for recovery. Trial is the highest and most difficult of hurdles for any Plaintiff to clear.